**Allen ZABIELSKI, Plaintiff–Appellant,**

**v.**

**MONTGOMERY WARD & CO., INCORPORATED, Defendant–Appellee.**

**Charles BROM, Plaintiff–Appellant,**

**v.**

**BOZELL, JACOBS, KENYON & ECKHARDT, INC., and Bozell Inc., Defendants–Appellees.**

**Nos. 90–1495, 90–1513.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1990.

Decided Dec. 11, 1990.

David L. Lee, Chicago, Ill., for Allen Zabielski.

Ronald J. Hein, Jr., Katherine L. Nee, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Montgomery Ward & Co., Inc.

Kathleen B. Baliunas, Chicago, Ill., for Charles Brom.

Alan F. Curley, David B. Kahn, Kahn, Robinson, Curley & Clayton, Chicago, Ill., Alan Marder (argued), Loed & Loed, New York City, for Bozell, Jacobs, Kenyon & Eckhardt, Inc. and Bozell, Inc.

Charles A. Shanor, Gwendolyn Young Reams, Vella M. Fink, Paul Bogas, E.E. O.C., Washington, D.C., for E.E.O.C., amicus curiae.

Before WOOD, Jr., POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Allen Zabielski and Charles Brom missed the deadline for filing suits under the Age Discrimination in Employment Act. Two statutes revive lapsed ADEA claims: the Age Discrimination Claims Assistance Act of 1988, Pub.L. 100–283, 102 Stat. 78, 29 U.S.C. § 626 note, and the Age Discrimination Claims Assistance Act of 1990, Pub.L. 101–504 (1990), which the President signed after the oral argument of these cases. Zabielski and Brom contend that these statutes breathe life into their suits; the district court decided otherwise under the 1988 law and did not have a crack at construing the 1990 act.

Here is § 3(a) of the 1988 Assistance Act, incorporating the 1990 amendments:

> EXTENSION.—Notwithstanding section 7(e) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 626(e)), a civil action may be brought under section 7 of such Act by the Commission or an aggrieved person, during the applicable extension period [which under § 3(b) extends into 1992] if—
>
> (1)(A) with respect to the alleged unlawful practice on which the claim in such civil action is based, a charge was timely filed under such Act with the Commission after December 31, 1983, (B) with respect to the alleged unlawful practice on which the claim in such civil action is based, a charge was timely filed under such Act with the Commission after April 6, 1985,
>
> (2) the Commission did not, within the applicable period set forth in section 7(e) either—
>
> (A) eliminate such alleged unlawful practice by informal methods of conciliation, conference, and persuasion, or
>
> (B) notify such person, in writing, of the disposition of such charge and of the right of such person to bring a civil action on such claim,
>
> (3)(A) with respect to a claim described in paragraph (1)(A) the statute of limitations applicable under such section 7(e) ran before the date of the enactment of this Act, or (B) with respect to a claim described in paragraph (1)(B) the statute of limitations applicable under such section 7(e) runs after April 6, 1988, but before the expiration of the 180–day period beginning on the date of the enactment of the Age Discrimination Claims Assistance Amendments of 1990 [May 2, 1991], and
>
> (4) a civil action on such claim was not brought by the Commission or such person before the running of the statute of limitations.

Zabielski and Brom filed timely charges with the EEOC after April 6, 1985, and are covered by § 3(a)(1)(B) of the Assistance Act. Neither filed suit within the two years provided for ordinary violations of the ADEA. The 1988 version of the Assistance Act applied only if the statute of limitations expired before April 6, 1988, the day that Assistance Act came into force, and the district judge dismissed both of these cases because he believed that Zabiel-

ski and Brom, having alleged that their employers "wilfully" violated the ADEA, had an extra year and could have filed timely suits on April 6, 1988. After the 1990 amendment, however, the Assistance Act applies if the regular statute of limitations expires as late as May 2, 1991. See § 3(a)(3)(B). No one doubts that the deadline for both of these suits is before May 2, 1991, so one ground of the district court's decisions has been sliced away.

Both employers maintain that another obstacle lies in the purpose of the Assistance Acts: to revive claims that lapsed because the EEOC led claimants to believe that it was looking out for their interests, while many claims lay forgotten. Neither Brom nor Zabielski was misled; neither claim was overlooked by the EEOC; and so, the employers insist, neither may take advantage of the statute. The employers accurately describe the impetus behind the Assistance Acts. Section 2 of the 1988 Act says as much. Yet it is fallacious to suppose that laws exorcize the demons that agitated Congress, doing neither more nor less. The Robinson–Patman Act, 15 U.S.C. § 13, was enacted to halt the growth of chain stores such as The Great Atlantic & Pacific Tea Company. Still, the law applies to price discrimination by manufacturers, and it has turned out to have less bite as applied to the chain stores themselves. See *Great Atlantic & Pacific Tea Co. v. FTC*, 440 U.S. 69, 99 S.Ct. 925, 59 L.Ed.2d 153 (1979).

Laws create means to ends; Congress rarely enacts the ends themselves. Rules may do more or less than their authors expected. See *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 916 F.2d 1154 (7th Cir.1990). Often Congress writes broadly, ensuring that cases do not slip through the cracks. That drafting technique has predictable consequences. Courts ought not trim off the breadth on the ground that the law affects more than the core of cases that led to action. To do so is to reverse the decision about what kind of law to write. *Prussner v. United States*, 896 F.2d 218 (7th Cir.1990) (in banc), illustrates the point. Congress revised the estate tax laws to protect farmers

who mistakenly relied on a misleading form. The IRS contended that the law protected *only* those who relied on the form; we replied that the argument "confuses the occasion for a statute with its scope and meaning." 896 F.2d at 226. So it is here. Errors by the EEOC were the occasion for the Assistance Acts, but their language—and thus their scope—is not linked to that episode. Congress revived the claims of persons claiming to be the victims of age discrimination and satisfying four criteria listed in § 3; an error by the EEOC is not on the list.

■ One element of the list, § 3(a)(2)(B), limits the extension to cases in which "the Commission did not, within the [applicable period of limitations] ... notify such person, in writing, of the disposition of such charge and of the right of such person to bring a civil action on such claim". Zabielski and Brom received notices from the EEOC within the statute of limitations. These notices told them "of the right ... to bring a civil action on such claim". The district court concluded that this information took these cases out of the scope of the Assistance Act, because "if you read the statute as a whole, the most important aspect of the statute is that the plaintiff be notified that he has the right to bring a civil action". Although this may well be the "most important," advice a claimant receives from the EEOC, § 3(a)(2)(B) comes into play only if the EEOC notifies the charging party of the right to bring an action *and* "the disposition of such charge".

The only communication from the EEOC that Zabielski received before the expiration of the statute of limitations said that the EEOC had received a copy of the charge Zabielski had filed with the Illinois Department of Human Rights. (Illinois is a "deferral state", in which claimants are supposed to file with state officials first.) The letter continued:

Unless you request otherwise, we plan no immediate action regarding your charge until the IDHR completes their investigation of your charge. You

should fully cooperate with the investigation by the IDHR.

The next paragraph said that Zabielski had two years from "the date of the alleged discriminatory action (three (3) years in cases of willful violations)" within which to file suit, and that Zabielski was "free" to sue 60 days after filing the charge, "notwithstanding any action by the EEOC or the IDHR." This advice was incomplete and potentially misleading, for it did not warn Zabielski (not expressly, anyway) that nothing the EEOC or the IDHR did would extend the time. Montgomery Ward, Zabielski's employer, contends that this letter is a "disposition of [the] charge"; if it is, Zabielski cannot take advantage of the Assistance Acts.

Appearing as *amicus curiae*, the EEOC informs us that it does not view such letters as "dispositions". The agency acknowledges all filings in this or a similar manner and often conducts substantial investigations afterward. The letter told Zabielski that the EEOC would take no "immediate" action; one natural implication is that action could come later. Such a letter *did* come later; in December 1988 the EEOC told Zabielski that it was "administratively closing its charge". If a letter deferring action for the time being is a "disposition" of the charge, then § 3(a)(2) undoes the Assistance Acts, for almost everyone who files a timely charge receives a letter of this kind long before the period of limitations expires. The EEOC's interpretation of its letter leaves some room for operation of the Assistance Acts; the employers' interpretation does not.

■ Montgomery Ward's best argument relies on *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). Title VII of the Civil Rights Act of 1964 gives state agencies 60 days of exclusive jurisdiction over charges filed with them. If a charge arrives at the state agency fewer than 60 days before the expiration of the limit for filing charges and stays exclusively with that agency, the employee may lose his rights under the Act, for the timeliness of a charge depends on when it is filed with the

EEOC. Agencies in some states refer charges immediately to the EEOC under "work sharing" arrangements, reserving the right to look at them again after the EEOC is done. *Commercial Office Products* holds that such perfunctory referrals "terminate" the state's exclusivity period, making timely a charge that would have come before the EEOC too late had the state kept jurisdiction for the full 60 days. Montgomery Ward insists that if the state's deferral to the EEOC is a "termination" under Title VII, then the EEOC's deferral to the state must be a "disposition" under the Assistance Acts.

Different terms in different statutes often have different meanings. States may "terminate" the period of their *exclusive* jurisdiction under Title VII; *Commercial Office Products* approved this practice. It does not follow that the EEOC's recognition of the pendency of the charge before the state agency amounts to a "disposition", which connotes closing the case. *Commercial Office Products* deferred to the EEOC's interpretation of Title VII and its work-sharing practices. 486 U.S. at 115. Montgomery Ward wants us to reject the EEOC's interpretation of the Assistance Acts and its own letters. Giving the EEOC's view the respect due it here, as the Supreme Court did in *Commercial Office Products,* we conclude that staying federal proceedings while the state investigates is not a "disposition" of the claim.

■ Bozell, Jacobs, Kenyon & Eckhardt, Inc., Brom's employer, has a different argument founded on § 3(a)(2)(B). Brom was fired on July 29, 1985. On July 27, 1987, the IDHR sent him a letter stating that "no substantial evidence" supported his allegation of age discrimination. On July 6, 1988, the EEOC sent Brom a letter saying:

> We have been informed by the Illinois Department of Human Rights that it has closed the above-referenced charge. The EEOC will take no further action on this charge.

Without doubt this is a "disposition of [the] charge". According to § 3(a)(2) of the Assistance Acts, a disposition "within the applicable period set forth in section 7(e)" of

the ADEA prevents resort to the "extension period". Section 7(e) incorporates § 6 of the Portal-to-Portal Act, 29 U.S.C. § 255, which establishes dual periods of limitations: two years for normal violations, three years for wilful ones. Brom's complaint alleges that Bozell Jacobs wilfully violated the ADEA. If it did, Brom had until July 29, 1988, within which to file suit. Because the EEOC's notice beat that deadline by three weeks, Bozell Jacobs submits, Brom is out of luck. The district judge agreed—and then refused to allow Brom to amend his complaint to delete the allegation of wilfulness and fall back on the two-year period, which had expired before the EEOC's disposition.

Joined by the EEOC as *amicus curiae,* Brom maintains that the "applicable" period of limitations for purposes of § 3(a)(2) of the Assistance Acts always is the two-year period for normal violations. Brom and the EEOC marshal the debates to show that Members of Congress referred exclusively to claims that were barred by the two-year period because of problems at the EEOC. 134 Cong.Rec. 5606 (1988) (Rep. Martinez), *id.* 5607 (Rep. Jeffords). Having rebuffed the employers' efforts to limit the Assistance Acts to the concerns that prompted their enactment, we find no greater merit in Brom's similar attempt. Senators and Representatives did not discuss the three-year period, but "[i]t is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history". *Pittston Coal Group v. Sebben,* 488 U.S. 105, 115, 109 S.Ct. 414, 420–21, 102 L.Ed.2d 408 (1988); *Eli Lilly & Co. v. Medtronic, Inc.,* — U.S. —, 110 S.Ct. 2683, 2688 n. 2, 110 L.Ed.2d 605 (1990). See also *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.,* 814 F.2d 358, 364–65 (7th Cir.1987). Section 3(a)(2) speaks of the "applicable period set forth in section 7(e)". That period is two years for most violations, three years for wilful ones. If because of the employer's wilfulness the claimant still had time to sue when the EEOC's disposition arrived, the extension is unavailable.

This is not enough, however, to support summary judgment for the employer. The choice between two and three years depends not on what Brom *alleges,* but on what he *proves.* Put the Assistance Acts aside for a moment and suppose that Brom had filed suit 30 months after his discharge, contending that Bozell Jacobs acted wilfully. Come the trial, Brom fails to show wilfulness, within the meaning of *TWA v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). That failure will fix the period of limitations at two years and require the dismissal of Brom's suit. *Heiar v. Crawford County,* 746 F.2d 1190, 1196 (7th Cir.1984). Under the Assistance Act, everything is reversed. Success in demonstrating wilfulness produces a longer period of limitations and dooms the suit. Yet the principle is the same: whether the period of limitations is two years or three depends on what the plaintiff proves. If Brom struggles to establish that Bozell Jacobs acted wilfully, and fails, then the "applicable period set forth in section 7(e)" of the ADEA is two years, and Brom's suit becomes timely under the Assistance Acts.

Topsy turvy though this be, the Assistance Acts make it desirable for plaintiffs to fail to show wilfulness—to make the period of limitations shorter. Counsel for the plaintiff and counsel for the employer reverse their usual roles. No matter which side benefits from the longer period, though, the length of the period under § 7(e) is a matter of proof rather than pleading. The upshot is that cases come out *as if* the "applicable" period were two years. Knowing that success in establishing an employer's wilful discrimination will lead to victory for the employer, the employee will not even try to show wilfulness. Failure of proof will mean that the period is two years, and the suit will proceed to the merits.

Pleadings under the Federal Rules of Civil Procedure notify the adversary of claims and defenses. The pleader is not obliged to prove everything asserted. A plaintiff who alleges that the exploding soda bottle was both a breach of warranty and a tort may announce on the day of trial that he is giving up the tort theory, or abandoning his request for punitive dam-

ages, or surrendering any effort to establish lost earnings. The dispute about whether the district judge should have allowed Brom to amend his complaint to drop the allegation of wilfulness is accordingly irrelevant. You don't have to amend the complaint in order to prove less than you allege. Lest this give Bozell Jacobs any ideas, we add that the employer cannot buy itself immunity by stipulating that it acted wilfully. The statute of limitations is an affirmative defense, and if at trial Brom does not try to prove wilfulness, there will be no occasion for the employer to advance its view of the subject. If the employer could raise the question on its own, it could waive all reliance on the statute of limitations for claims filed before May 2, 1991, giving an employee extra time in which to sue—which in the world of the Assistance Acts would prevent suit. The statutes are not so easily subverted.

██ One final subject requires mention. Zabielski was demoted from a managerial to a sales position in March 1985, and his income dropped from approximately $26,000 to some $9,600 per year. He quit in July 1985. His charge of age discrimination challenged the demotion. The district court concluded that even if the Assistance Acts apply, Zabielski could not collect more than the difference in income during the three months following the demotion; anything else, the court thought, is outside the scope of the charge. Zabielski contends that the demotion is a constructive discharge. There was one act of discrimination (the demotion) with two effects: lower income for three months, and no job thereafter. The charge adequately raises this claim and allows Zabielski to argue that the demotion was a constructive discharge. See generally *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164 (7th Cir.1976) (in banc).

The judgments of the district court are reversed, and the cases are remanded for further proceedings consistent with this opinion.