Ernest **PETERSON**, Plaintiff,

v.

**INSURANCE COMPANY OF NORTH AMERICA and CIGNA Corporation,** Defendants.

No. 92 Civ. 416 (RLC).

United States District Court, S.D. New York.

May 26, 1993.

Lilly Sullivan Purcell Barkan & Junge, P.C., New York City (Philip C. Ross, Agnes C. McKeon, of counsel), for plaintiff.

Gregory B. Tobin, Philadelphia, PA (Gregory B. Tobin, of counsel), Law Offices of Joseph W. Conklin, New York City (James Lloyd, of counsel), for defendants.

### OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Ernest Peterson alleges that he was constructively discharged by defendant Insurance Company of North America ("ICNA")[1] in willful violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and in breach of an employment contract. Defendants have moved for summary judgment on both claims, pursuant to Rule 56, F.R.Civ.P.

The following facts are not in dispute: Peterson was hired by defendants as a casualty underwriter on December 13, 1970. In December, 1986, Peterson advised ICNA that he intended to retire. Plaintiff agreed to rescind his resignation, however, after ICNA promised him that he could work a four-day week for five days pay plus a salary increase. The parties agree that the four-day arrangement was to last "indefinitely". Peterson alleges that ICNA also promised him a second raise and/or bonus in June, 1987, a lighter workload, and more support staff. He further alleges that ICNA: reneged on prac-

1. Defendant ICNA is a wholly-owned subsidiary

tically every aspect of the deal; immediately began seeking a replacement for him; and, in June, 1987, demanded he return to a five-day work week.

Peterson resigned on October 28, 1987, at the age of 63, and on February 1, 1988, he filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age-based discrimination. By letter dated February 19, 1988, the EEOC advised him:

The New York State Division of Human Rights will be investigating this charge in accordance with procedures established by the Commission. Although the Commission does not plan to investigate this charge, we will assure that the charge has been resolved in the appropriate manner and we may take further action at our discretion if we do not consider the agency's processing appropriate.

\* \* \* \* \* \*

The ADEA provides that an individual may file suit in federal court upon the expiration of 60 days from the charge filing date noted above notwithstanding any action by the Commission or the state/local agency. It is important to note that a law suit must be filed in Federal District Court under the Age Discrimination in Employment Act within 2 years from the date of the adverse employment action (3 years in case of willful violation). (Letter from Anna Cedo, Supervisor, Charge Receipt/Technical Information Unit, EEOC, to Ernest C. Peterson, dated February 19, 1988, the "February, 1988 letter").

In July, 1988, the EEOC wrote plaintiff a second letter reminding him of the time limits applicable to a private lawsuit under the ADEA. Nearly two years later, Peterson received another letter from the EEOC. That letter informed him, in pertinent part:

Based upon our records, unless you have already filed a private ADEA action in federal district court, you may have lost that right. This is because the two (2) year statute of limitations period for filing such action has lapsed. Based on this the EEOC is administratively closing the federal aspects of your complaint.... (Let-

of defendant CIGNA.

ter from Richard B. Alpert, Enforcement Manager, EEOC, to Ernest C. Peterson, dated May 30, 1990, the "May, 1990 letter").

Plaintiff filed the complaint in this action on January 17, 1992.

I

Defendants contend that they are entitled to summary judgment on the ADEA cause of action because that claim, which asserts only a willful violation, is time-barred. Plaintiff concedes that the limitations period commenced to run on October 28, 1987, the date plaintiff submitted notice of his retirement. Since the statute of limitations applicable to claims of willful discrimination is three years (two years for non-willful violations), 29 U.S.C. § 626(e)(1), ADEA § 7(e), all parties agree that the limitations period ended on October 28, 1990, long before plaintiff brought this action.

Plaintiff argues, however, that his claim is nonetheless timely as a result of the Age Discrimination Claims Assistance Act ("ADCAA") § 3, Pub.L. 100–283, 102 Stat. 78, (April 7, 1988), *as amended,* Pub.L. 101–504, § 2, 104 Stat. 1298 (November 3, 1990), *reprinted in* 29 U.S.C.A. § 626 historical and statutory note (Supp.1993), which extended the limitations periods otherwise applicable under the ADEA.[2] The ADCAA, as amended, provides, in pertinent part:

**Section 3. Extension of statute of limitations.**

(a) **Extension.**—Notwithstanding section 7(e) of the Age Discrimination in Employment Act of 1967, . . . a civil action may be brought under section 7 of such Act by the Commission or an aggrieved person, during the applicable extension period if—

\*      \*      \*      \*      \*      \*

(1)(B) with respect to the alleged unlawful practice on which the claim in such civil action is based, a charge was timely filed under such Act with the Commission after April 6, 1985,

(2) the Commission did not within the applicable period set forth in section 7(e) either—

(A) eliminate such alleged unlawful practice by informal methods of conciliation, conference, and persuasion, or

(B) notify such person in writing, of the disposition of such charge and of the right of such person to bring a civil action on such claim,

\*      \*      \*      \*      \*      \*

(3)(B) with respect to a claim described in paragraph (1)(B) the statute of limitations applicable under section 7(e) runs after April 6, 1988, but before the expiration of the 180-day period beginning on the day of the enactment of the Age Discrimination Claims Assistance Amendments of 1990 [November 3, 1990].

(4) a civil action on such claim was not brought by the Commission or such person before the running of the statute of limitations.

(b) **Definition.**—The term "extension period" means . . . (2) with respect to a charge described in paragraph (1)(B), the 450 day period beginning [November 3, 1990.]

Defendants do not contest that plaintiff satisfies three of the four requirements for an extension listed in ADCAA § 3(a). Plaintiff filed a charge with the EEOC on February 1, 1988, thereby satisfying ADCAA § 3(a)(1)(B); the three-year limitations period expired on October 28, 1990, which was after April 6, 1988 and before May 1, 1991, as required by ADCAA § 3(a)(3)(B); and no civil action was filed on plaintiff's claim prior to October 28, 1990, in satisfaction of ADCAA § 3(a)(4).

However, defendants contend that plaintiff is not entitled to an extension because he cannot meet the notice requirement set forth in ADCAA § 3(a)(2)(B). According to defendants, the EEOC *did* notify plaintiff of its disposition prior to the running of the limita-

---

**2.** Congress passed the ADCAA to redress the effects of EEOC mismanagement of age-based discrimination claims. *See, e.g.,* ADCAA § 2; *Aleszczyk v. Xerox, Corp.,* 135 L.R.R.M. 3091, 1990 WL 251849, \*6, 1990 U.S.Dist. LEXIS 17921, \*18 (W.D.N.Y.1990) (citing *Turgeon v. Rush–Pres-* *byterian–St. Luke's Medical Center,* 1989 WL 157518, 1989 U.S.Dist. LEXIS 14856 (N.D.Ill. 1989)), *aff'd in part and rev'd in part on other grounds,* 918 F.2d 1052 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).

tions period because the May, 1990 letter, which arrived five months before the statutory period expired, informed plaintiff "the EEOC is administratively closing the federal aspects of your complaint."

Peterson maintains that he did not receive notice of the disposition of his charge because the February, 1988 letter was ambiguous. In support of his position, plaintiff cites four cases which found that an EEOC letter, similar to the February, 1988 letter, did not notify the claimant of a "disposition" because it failed to communicate the finality of the EEOC's action.[3] These cases are clearly distinguishable because Peterson received a subsequent communication, the May, 1990 letter, which unequivocally indicated that no further action would occur concerning plaintiff's ADEA charge.

■ Nevertheless, plaintiff contends that the May, 1990 letter was also confusing because it stated that the decision to close his case was "based on" the two-year limitations period for non-willful violations rather than the three-year period for willful discrimination. Indeed, the reason for the EEOC's reliance on the two-year limit is obscure. Nonetheless, a mistake by the EEOC is not among the criteria which entitles a claimant to an extension of time under the ADCAA. See ADCAA § 3; see also Zabielski v. Montgomery Ward & Co., 919 F.2d 1276, 1278 (7th Cir.1990). Although this letter is confusing

as to the EEOC's rationale, the EEOC's decision, to close the case, is perfectly plain. Thus, the EEOC notified Peterson of the disposition of his charge prior to the expiration of the applicable three-year limitations period. Since he is, therefore, not entitled to an extension of time under the ADCAA, plaintiff's claim based on a willful violation of the ADEA is time-barred.

■ It does not necessarily follow, however, that plaintiff's ADEA claim must be dismissed altogether. Under certain circumstances, the court may grant plaintiff leave to amend his complaint, pursuant to Rule 15(a), F.R.Civ.P., to assert a cause of action based on a non-willful violation of the ADEA. See EEOC v. Chrysler Corp., 729 F.Supp. 1002, 1005 (S.D.N.Y.1990) (Patterson, J.); accord Ruggieri v. Warner & Swasey Co., 938 F.2d 322, 326 (1st Cir.1991); see also Zabielski, 919 F.2d at 1280; Harter v. GAF Corp., 967 F.2d 846, 851 (3rd Cir.1992). Although such a claim would be timely,[4] Peterson cannot amend his complaint in this manner because his claim is grounded on a constructive discharge which is inherently intentional. See, e.g., Spence v. Maryland Casualty Company, 995 F.2d 1147 (2d Cir.1993); Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983).[5] Thus, it would be incongruous to allege non-willful discrimination in this case.

3. *Zabielski v. Montgomery Ward & Co.*, 919 F.2d 1276 (7th Cir.1990) concerned a routine letter from the EEOC to the claimant informing him that the EEOC would take no "immediate" action. Since the language implied that some action may follow later, the court held that it did not indicate a disposition. Similarly, in *Ruggieri v. Warner & Swasey Co.*, 938 F.2d 322, 324 (1st Cir.1991), the EEOC letter tentatively informed the claimant: "unless you are notified otherwise, we plan no action regarding the charge under the Federal Age Discrimination in Employment Act." The EEOC letter in *Schleiniger v. Des Moines Water Works*, 925 F.2d 1100 (8th Cir. 1991), merely acknowledged that the claim had been filed with the state commission. In the final case cited by plaintiff, *Harter v. GAF Corp.*, 967 F.2d 846, 849 (3rd Cir.1992), the EEOC letter stated: "The EEOC, however, will take no further action whatsoever as far as the processing of your charge is concerned. Instead you should continue to cooperate with the state agency in its investigation of your complaint." The court found that letter to be ambiguous because

the sentence telling the claimant his case was closed was followed by a sentence indicating the case was open.

4. Although the EEOC notified Peterson of its disposition prior to the expiration of the three-year limitations period applicable to willful violations, Peterson was first notified of the disposition *after* October 28, 1989, the date on which the two-year (non-willful) limitations period ended. Thus, he would satisfy all the requirements for an extension under the ADCAA for a non-willful claim. Moreover, the amended complaint would be timely pursuant to the back-dating provision set forth in Rule 15(c), F.R.Civ.P.

5. A constructive discharge occurs when an "an employer, rather than acting directly, '*deliberately* makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena*, 702 F.2d at 325 (quoting *Young v. Southwestern Savings and Loan Assn.*, 509 F.2d 140, 144 (5th Cir.1975)) (emphasis added).

**1044**

Accordingly, summary judgment is granted as to the plaintiff's first cause of action.[6]

## II

Defendants also seek summary judgment on plaintiff's second cause of action for breach of contract based on the oral agreement between plaintiff and defendants which induced Peterson to retract his initial letter of resignation. Peterson contends that he was compelled to resign the second and final time because ICNA breached that agreement by allegedly failing to give him a promised salary increase and demanding that he resume a five-day work week.

■ It is well settled law in New York that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 506 N.E.2d 919, 92, 514 N.Y.S.2d 209, 211 (1987) (citing *Martin v. New York Life Ins. Co.*, 148 N.Y. 117, 121, 42 N.E. 416 (1895)). Since there is no question that plaintiff was an at-will employee, hired for an indefinite period, ICNA had the right to terminate him or alter the conditions of his employment.

■ Plaintiff nonetheless urges the court to impose on ICNA an obligation of good faith and fair dealing. The New York Court of Appeals has expressly held, however, that an obligation of good faith and fair dealing will not be read into a contract for employment at will. *Sabetay*, 69 N.Y.2d at 335, 506 N.E.2d at 922, 514 N.Y.S.2d at 212; *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983).[7] Thus, plaintiff's second cause of action is dismissed.

*Conclusion*

Based on the foregoing analysis, defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

---

**6.** Even if plaintiff's ADEA claim were timely, summary judgment would probably still be required because it does not appear that plaintiff can meet the stringent standard for demonstrating a constructive discharge. *See Stetson v. MY-NEX Service Co.*, 995 F.2d 355 (2d Cir.1993); *Spence v. Maryland Casualty Company*, 995 F.2d 1147 (2d Cir.1993) ("constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticism of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant.")

**7.** In *Murphy,* the court held that "No obligation can be implied ... which would be inconsistent with other terms of the contractual relationship.... [P]laintiff's employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. In the context of such an employment it would be incongruous to say that ... the employer impliedly agreed to a provision which would be destructive of his right of termination." 58 N.Y.2d at 304–5, 461 N.Y.S.2d 232, 448 N.E.2d 86.