Ernest PETERSON, Plaintiff–Appellant,

v.

INSURANCE COMPANY OF NORTH
AMERICA and Cigna Corporation,
Defendants–Appellees.

No. 764, Docket 93–7641.

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1994.

Decided Nov. 15, 1994.

Philip S. Ross, New York City (Agnes C. McKeon, Lilly Sullivan Purcell Barkan & Junge, P.C., New York City, of counsel), for plaintiff-appellant.

Gregory B. Tobin, Philadelphia, PA (James M. Lloyd, Law Offices of Joseph W. Conklin, New York City, of counsel), for defendants-appellees.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Judge.*

MAHONEY, Circuit Judge:

Plaintiff-appellant Ernest Peterson appeals from a judgment entered June 1, 1993 in the United States District Court for the Southern District of New York, Robert L. Carter, *Judge,* that granted summary judgment in favor of defendants-appellees Insurance Company of North America and Cigna Corporation (collectively "ICNA") and dismissed Peterson's complaint. Peterson claimed that he had been terminated in violation of the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. § 621 *et seq.* His complaint was dismissed on the basis that he had failed to bring his action before the statute of limitations expired. *See Peterson v. Insurance Co. of N. Am.,* 822 F.Supp. 1040 (S.D.N.Y.1993) (opinion supporting judgment).

Peterson contends on appeal that the district court erred in holding that: (1) the Age Discrimination Claims Assistance Act, Pub.L. No. 100–283, 102 Stat. 78 (1988), *as amended,* Pub.L. No. 101–504, 104 Stat. 1298 (1990) (the "ADCAA"), *reprinted in* 29 U.S.C.A. § 626 historical and statutory note (Supp. 1994), was unavailable to Peterson to extend the limitations period; and (2) Peterson could not amend his complaint to allege non-willful discrimination, which would have entitled him to rely on the ADCAA.

For the reasons that follow, we reverse.

---

* The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

## Background

From December 13, 1970 until October 28, 1987, Peterson worked for ICNA as a casualty underwriter. In December 1986, Peterson advised ICNA that he intended to retire because he felt that his work was not appropriately recognized in performance reviews or with promotions and raises, even though ICNA had assigned him an extra workload because of his qualifications and experience. Peterson changed his mind, however, after ICNA promised him both a raise and a reduced work week, an arrangement that was to last indefinitely. According to Peterson, the arrangement also included a promise for a second raise in June 1987, a lighter workload, and a support staff. He claims that ICNA repudiated the agreement by allowing his workload to increase, and (in June 1987) refusing to give him the promised raise and demanding that he resume working a full five-day week. Peterson submitted his letter of resignation on October 28, 1987.

On February 1, 1988, Peterson filed a charge with the Equal Employment Opportunity Commission (the "EEOC") alleging that ICNA had forced him to resign because of his age. By letter dated February 19, 1988 (the "February 1988 Letter"), the EEOC informed Peterson that:

The EEOC has received the above-referenced age discrimination charge and we have transferred the charge to the [New York State Division of Human Rights] for investigation. By virtue of this action, the charging party's private suit rights under the Federal Age Discrimination in Employment Act (ADEA) have been preserved. The New York State Division of Human Rights will be investigating this charge in accordance with procedures established by the Commission. Although the Commission does not plan to investigate this charge, we will assure that the charge has been resolved in the appropriate manner and we may take further action at our discretion if we do not consider the agency's processing appropriate.

. . . .

The ADEA provides that an individual may file suit in federal court upon the expiration of 60 days from the charge filing date noted above notwithstanding any action by the Commission or the state/local agency. It is important to note that a law suit must be filed in Federal District Court under the Age Discrimination in Employment Act within 2 years from the date of the adverse employment action (3 years in the case of willful violation).

The EEOC then sent Peterson a second letter dated July 25, 1988 (the "July 1988 Letter"), which stated:

As you are aware, your charge of employment discrimination has been filed with this office. . . . This letter is to notify you of the time limits which apply to private lawsuits under the Age Discrimination in Employment Act (ADEA).

You indicate in your charge that the date of the alleged discriminatory act is _____. The ADEA provides that any person aggrieved may sue for recovery of back pay, and [sic] equal amount as liquidated damages, appropriate make-whole relief, attorney's fees and court costs or injunctive relief so long as a charge is filed with EEOC within 300 days of the alleged discrimination and *so long as the lawsuit is filed within two years of the alleged discrimination (this statute of limitations is extended to three years if the violation is proven to be willful)*.

In order for you to protect your right to pursue a lawsuit. [sic] You must file a complaint in court before the two year statute of limitations has run, which is _____. You may wish to consult a private attorney to discuss your rights and the procedures for filing a lawsuit under the ADEA.

Emphasis and blanks in original.

By letter dated May 30, 1990 (the "May 1990 Letter"), the EEOC advised Peterson that:

If you wished to file a private action under the ADEA in federal district court, you should have done so within two (2) years of the date of the alleged discriminatory act. Proof that the alleged violation was willful may extend this filing period to three (3) years. We advised you of this two (2) year statute of limitations under the ADEA shortly after you filed your charge.

Based upon our records, unless you have already filed a private ADEA action in federal district court, you may have lost that right. This is because the two (2) year statute of limitations period for filing such action has lapsed. Based on this the EEOC is administratively closing the federal aspects of your complaint. The EEOC's closure of the case does not affect your rights under state law. There is no similar statute of limitations under the law enforced by the [New York State Division of Human Rights ("NYSDHR")]. Under state law, NYSDHR will continue processing your age discrimination complaint under applicable state procedures.

Finally, by letter dated December 7, 1990, the EEOC advised Peterson of the enactment of the ADCAA, its application to "certain age discrimination charges which were not resolved within applicable limitations periods," and the EEOC's identification of Peterson's "charge as one which may be affected by ADCAA." The EEOC further advised that if the ADCAA was applicable to Peterson's case, it would extend the deadline for Peterson to commence suit to January 26, 1992.

On January 17, 1992, Peterson brought this action against ICNA, alleging that ICNA had constructively discharged him due to his age in willful violation of the ADEA, and also asserting a state law claim for breach of contract. ICNA moved for summary judgment, claiming, *inter alia*, that the limitations period had expired and that the ADCAA did not extend the period. The district court granted the motion and dismissed Peterson's complaint, accepting ICNA's argument regarding the statute of limitations and the ADCAA, and ruling *sua sponte* that Peterson could not amend his complaint to allege a nonwillful violation of the ADEA. *See Peterson*, 822 F.Supp. at 1042–44.

This appeal followed.

Discussion

The parties agree that the limitations period in a constructive discharge case accrues upon the date that the employee gives notice of resignation, October 28, 1987 in Peterson's case. Therefore, absent the ADCAA, Peterson would have been required to bring his complaint for a willful violation of the ADEA no later than October 28, 1990, and a complaint for a nonwillful violation no later than October 28, 1989. *See* 29 U.S.C. §§ 626(e)(1), 255(a).

Congress enacted the ADCAA after finding that the EEOC had failed to timely process charges filed under the ADEA, causing many persons who filed such charges to lose their right to bring a civil action. ADCAA § 2. The ADCAA extends the limitations period for persons who meet specified statutory criteria to 450 days from the date of the enactment of the 1990 amendments to the ADCAA, November 3, 1990; i.e., to January 26, 1992. ADCAA § 3(b)(2). Peterson filed this action nine days before the extended period expired.

As applicable in this case, the ADCAA provides:

(a) **Extension.**—Notwithstanding section 7(e) of [the ADEA] (29 U.S.C. § 626(e)), a civil action may be brought under section 7 of such Act by the Commission or an aggrieved person, during the applicable extension period [i.e., prior to January 26, 1992] if—

. . . .

(1)(B) with respect to the alleged unlawful practice on which the claim in such civil action is based, a charge was timely filed under such Act with the Commission after April 6, 1985.

(2) the Commission did not, within the applicable period set forth in section 7(e) . . .

(B) notify such person, in writing, of the disposition of such charge and of the right of such person to bring a civil action on such claim[.]

. . . .

(3)(B) with respect to a claim described in paragraph (1)(B) the statute of limitations applicable under such section 7(e) runs after April 6, 1988, but before the expiration of the 180–day period beginning on [November 3, 1990].

(4) a civil action on such claim was not brought by the Commission or such person before the running of the statute of limitations.

ADCAA § 3(a).

There is no dispute that Peterson meets the requirements of subsections (1)(B), (3)(B), and (4) of ADCAA § 3(a). *See Peterson*, 822 F.Supp. at 1042. Peterson filed his charge with the EEOC after April 6, 1985, satisfying subsection 1(B). The statute of limitations ran on his claims for both willful and nonwillful violations of the ADEA after April 6, 1988 but before May 2, 1991 (180 days from November 3, 1990), satisfying subsection 3(B). No civil action was brought by the EEOC or Peterson before the running of the normally applicable statute of limitations, satisfying subsection 4. Moreover, as the district court noted, *see Peterson*, 822 F.Supp. at 1043 n. 4, Peterson satisfies subsection (2)(B) for a nonwillful claim because the May 1990 Letter advising him of the EEOC's disposition of his claim arrived after the two-year limitations period had expired on October 28, 1989.

This appeal turns, therefore, on whether Peterson received proper notice before the limitations period for his claim of a willful violation of the ADEA expired, and whether he may amend his complaint to allege a claim of a nonwillful violation.[1]

A. *Notice Pursuant to ADCAA § 3(a)(2)(B).*

Peterson claims that although the February 1988 Letter and the July 1988 Letter advised him of his right to bring a civil action, and the May 1990 Letter notified him of the EEOC's disposition of his case, the

---

**1.** ICNA's motion for summary judgment asserted as an alternative ground for relief that Peterson had not been constructively discharged. The district court indicated its probable agreement with that view in a footnote to its opinion. *See Peter-* son, 822 F.Supp. at 1044 n. 6. ICNA concedes, however, that this passing observation did not constitute "a decision on the merits of Peterson's claim of constructive discharge in violation of [the] ADEA."

letters were collectively ambiguous and did not give him proper notice because the May 1990 Letter indicated that he could no longer sue on his claim. He also argues that the two required items of information—his right to bring a civil action and the EEOC's disposition of his claim—must be stated in the same letter. ICNA argues that the requirements of the statute were met by the letters taken in combination, and that there is no statutory requirement that the prescribed notifications be communicated in a single document.

Several facts are clear. First, both the February 1988 Letter and the July 1988 Letter plainly notified Peterson of his right to bring a civil action. Moreover, they notified him of the two applicable limitations periods, which the ADCAA facially does not require.

Second, neither letter provided notice of the disposition of Peterson's charge. The July 1988 Letter does not address the issue of disposition in any way. The February 1988 Letter states: "Although the Commission does not plan to investigate this charge, we will assure that the charge has been resolved in the appropriate manner and we may take further action at our discretion if we do not consider the [NYSDHR's] processing appropriate." This language suggests the possibility of further action, rather than a disposition of the case, which connotes finality. *See Harter v. GAF Corp.*, 967 F.2d 846, 849–51 (3d Cir.1992); *Ruggieri v. Warner & Swasey Co.*, 938 F.2d 322, 324–25 (1st Cir. 1991); *Schleiniger v. Des Moines Water Works*, 925 F.2d 1100, 1101–02 (8th Cir.1991); *Zabielski v. Montgomery Ward & Co.*, 919 F.2d 1276, 1278–79 (7th Cir.1990).

Third, the May 1990 Letter, which informed Peterson that the EEOC was administratively closing his file, did provide notice of the disposition of his case. *See Zabielski*, 919 F.2d at 1279.

This leaves Peterson's contentions that the May 1990 Letter was ambiguous and thereby dispelled the prior notifications of his right to bring a civil action, and that the two required notices must appear in the same letter. The statute does not require that both notices appear in the same document, and we decline to adopt a *per se* rule to that effect. We are persuaded, however, by Peterson's claim that the May 1990 Letter was ambiguous.

That letter advised Peterson that "[i]f [he] wished to file a private action under the ADEA in federal district court, [he] should have done so within two (2) years of the date of the alleged discriminatory act." This declaration was reiterated, but less definitively, by a statement that if Peterson had not already sued, he "*may* have lost that right [emphasis added]." The letter made two more references to the "two (2) year statute of limitations," repeating that it had "lapsed," and asserting that: "Based on this the EEOC is administratively closing the federal aspects of your complaint." The Letter added that Peterson could continue to pursue his claim under state law. After the first reference to the two-year statute of limitations, however, the letter stated: "Proof that the alleged violation was willful *may* extend this filing period to three (3) years [emphasis added]."

We agree with Peterson that the overall impact of this communication was to undercut the prior notifications in the February 1988 and July 1988 Letters that he had three years from the maturation of his claim to bring an action for willful violation of the ADEA. The prior advice about the availability of a three-year limitations period for a willful violation was downgraded to a tentative "may extend" formulation, and the balance of the May 1990 Letter was thoroughly negative about any continuing recourse to a federal remedy. A layperson could surely read the May 1990 Letter as a statement that all federal rights were extinguished. By informing Peterson that the "federal aspects of his complaint" were "clos[ed]" and to pursue his rights under state law, the EEOC arguably placed him in a worse situation than the one that Congress sought to remedy. Rather than wonder about the status of his case because the EEOC had never notified him about its disposition, Peterson could have been led to believe that all federal avenues were closed.

 While it is true, as INCA points out, that the ADCAA does not require the

EEOC to notify claimants about the applicable limitations period, once the EEOC undertakes to provide such information, it must do so with greater clarity than is shown on this record. Accordingly, we hold that the notice requirement of § 3(a)(2)(B) of the ADCAA was not met with respect to Peterson's claim of a willful violation of the ADEA, thereby entitling Peterson to rely on the extended limitations period for that claim.

## B. *The Claim of a Nonwillful Violation.*

Although we reverse the district court's ruling as to Peterson's claim of a willful violation, we reach the issue whether Peterson may amend his complaint to allege a nonwillful violation of the ADEA both because Peterson may wish to pursue this alternative theory should his willfulness theory fail on remand, and in order to correct a misstatement of the law by the district court. As noted above, because the notice of disposition provided by the May 1990 Letter arrived after the two-year limitations period for a claim of a nonwillful violation had expired, the ACDAA acts to extend the limitations period. Moreover, as the district court correctly noted, the amended complaint would relate back to the time that the initial complaint was filed for statute of limitations purposes. *See Peterson,* 822 F.Supp. at 1043 n. 4; Fed.R.Civ.P. 15(c) (new claim relates back if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading").

■ We review a district court's decision to deny leave to amend for an abuse of discretion. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (citing *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986)). The district court held that Peterson could

not amend his complaint because "his claim is grounded on a constructive discharge which is inherently intentional. Thus, it would be incongruous to allege non-willful discrimination in this case." *Peterson,* 822 F.Supp. at 1043 (citations and footnote omitted). ICNA urges us to adopt this reasoning, noting that INCA's conduct, if proven, was deliberate.

■ INCA misconstrues the nature of the "willfulness" element. In assessing willfulness, a jury does not consider whether the employer's conduct was intentional or deliberate; such a finding must be made in any event.[2] Rather, the jury must consider whether the employer, when engaging in such conduct, "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); *see also Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 1709–10, 123 L.Ed.2d 338 (1993) (unanimously reaffirming *Thurston* standard). Thus, an employer who has engaged in conduct that violates the ADEA, but did not know (and was not reckless in its ignorance) that the conduct would violate the ADEA, will be liable only for a nonwillful violation and will not be subject to liquidated damages. *See* 29 U.S.C. §§ 626(b), 216(b) (providing for double damages in the case of a willful violation).

Indeed, the Court rejected the imposition of liquidated damages in *Thurston,* determining that Trans World Airlines adopted the policy at issue in that case (that captains who reach the age of sixty transfer to the position of flight engineer) only after making a good faith inquiry and concluding that the ADEA's prohibition of mandatory retirement did not

---

**2.** As we stated in *Stetson v. NYNEX Service Co.,* 995 F.2d 355 (2d Cir.1993):

In order to establish a prima facie case of termination of employment in violation of the ADEA, a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the job, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination. A "discharge," in satisfaction of the third element of the prima facie case, may be either an actual termination

of the plaintiff's employment by the employer or a "constructive" discharge...:

To establish a "constructive discharge," a plaintiff must show that the employer "'*deliberately* ma[de his] working conditions so intolerable that [he was] forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat,* 702 F.Supp. [322, 325 (2d Cir.1983)] (quoting *Young v. Southwestern Sav. & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975)).

*Id.* at 359–60 (alterations partially added, citations partially omitted).

preclude the new policy. *See* 469 U.S. at 129–30, 105 S.Ct. at 625–26. Thus, *Thurston* involved an intentional, yet nonwillful, violation of the ADEA.

■ In sum, the district court erred in holding that a constructive discharge must necessarily constitute a willful violation of the ADEA, and in refusing to allow an amendment of the complaint on that basis. Because this issue was addressed *sua sponte,* however, and the parties accordingly did not have an opportunity to argue the merits of a motion to amend, we determine only that the court's rationale in denying amendment was erroneous. On remand, the district court should determine whether this case involves a circumstance that would defeat the ordinary rule that "leave [to amend] shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Tokio Marine,* 786 F.2d at 103.[3]

### Conclusion

We reverse the judgment of the district court and remand for proceedings not inconsistent with this opinion.

---

3. Peterson argues in his main appeal brief that his complaint should be deemed to allege a nonwillful violation of the ADEA, citing *EEOC v. Chrysler Corp.,* 729 F.Supp. 1002 (S.D.N.Y.1990). In that case, the court asserted that: "Subsumed within the complaint [alleging a willful violation of the ADEA] is a cause of action arising out of an ordinary or non-willful violation." *Id.* at 1005; *cf. Harter,* 967 F.2d at 851 ("Harter effectively, if not explicitly, pleaded his case in the alternative...."). We decline to adopt this approach. While it is true that proof of every element of a willful violation except for willful-

ness makes out a case for a nonwillful violation, under our system of notice pleading and pleading in the alternative, a party should plead all theories that he wishes to pursue. *See* Fed.R.Civ.P. 8(a); *see also Ruggieri,* 938 F.2d at 326 (noting, but not adopting, *Chrysler* formulation and remanding to the district court to determine whether to grant motion to amend). It is preferable that Peterson's attempt to assert a claim for a nonwillful violation of the ADEA be resolved via a normal motion to amend pursuant to Fed. R.Civ.P. 15(a).