**Ernest C. PETERSON, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Cigna Corporation, Defendants.**

**No. 92 Civ. 0416 (RLC).**

United States District Court, S.D. New York.

April 12, 1995.

---

**108**

Philip S. Ross, New York City, for plaintiff.

Gregory B. Tobin, Philadelphia, PA, James Lloyd, Law Offices of Joseph W. Conklin, New York City, for defendants.

### *OPINION*

ROBERT L. CARTER, District Judge.

*Preliminary Statement*

Defendants Insurance Company of North America and CIGNA Corporation (collectively called "ICNA") move the court to dismiss the claims of plaintiff Ernest C. Peterson for denial of a promotion in 1985 and denial of appropriate salary increases in 1985 and 1986, pursuant to Rules 12(h)(3) and 16 of the Federal Rules of Civil Procedure, on the grounds that this court lacks subject matter jurisdiction over such claims. Defendants also move the court to exclude evidence related to such claims, in particular plaintiff's exhibit nos. 27, 29, 31, 37, 41, 42 and 43, pursuant to Rules 401 and 402 of the Federal Rules of Evidence, on the grounds that such evidence would be irrelevant.

On February 1, 1988 Peterson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that ICNA discriminated against him, in violation of the Age Discrimination in Employment

Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.* On January 17, 1992 Peterson brought this action against ICNA, alleging that he had been constructively discharged, in willful violation of the ADEA, and that ICNA breached an agreement with him, in violation of state law.

### I.

Defendants argue that plaintiff failed to allege that he was denied a promotion in his EEOC discrimination charge, and that therefore, this court lacks jurisdiction over this claim in Peterson's present ADEA suit and evidence pertaining to the claim must be excluded as irrelevant and prejudicial. In general,

> the courts in this circuit have been reluctant to hear claims that were not originally filed with the EEOC. Furthermore, they have not been willing to afford a claimant's original filing such broad interpretation that virtually any type of alleged discrimination can be included in a subsequent lawsuit.

*Dennis v. Pan American World Airways, Inc.,* 746 F.Supp. 288, 290 (E.D.N.Y.1990) (Title VII and ADEA case). The Second Circuit has stated that, "[n]o action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC ... and within the scope of the EEOC investigation reasonably expected to grow out of that filing." *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23–26 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). In *Miller,* the plaintiff alleged discriminatory discharge but not discriminatory failure to rehire in his EEOC complaint. The court concluded that "[t]here would be no reason for the EEOC to investigate the failure to rehire in connection with the claim of alleged discriminatory discharge unless the former were asserted as part of that claim," and therefore, the discharge claim was not permitted as a basis for plaintiff's subsequent ADEA action. *Id.*

■ The same basic standards apply to both ADEA and Title VII claims, *Albano v. Schering–Plough Corp.,* 912 F.2d 384, 386 n. 1 (9th Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991), and the "ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1260 (10th Cir.1976) (describing similarities between Title VII and the ADEA), *aff'd,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), therefore, the court seeks guidance from Title VII cases in determining this jurisdictional matter. The Second Circuit has stated that, "[t]he scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978) (citing cases); *accord Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1402 (2d Cir.1993) (court can consider discrimination claims reasonably related to allegations asserted in EEOC complaint) (citing cases); *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984) (same); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980) (same); *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979) ("We look not merely to the four corners of the often inarticulately framed [EEOC] charge"), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Bradley v. Consolidated Edison Co. of N.Y., Inc.,* 657 F.Supp. 197, 202 (S.D.N.Y.1987) (Kram, J.).

■ The courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge. *See Dennis v. Pan American World Airways, Inc.,* 746 F.Supp. 288, 291 (E.D.N.Y.1990) (court dismissed age discrimination claim under ADEA in Title VII action, where plaintiff asserted racial discrimination and only mentioned having to retire early in her initial EEOC charge); *Kawatra v. Medgar Evers College of the City Univ. of N.Y.,* 700 F.Supp. 648, 654 (E.D.N.Y.1988) (court concluded that plaintiff's marital status discrimination claim in Title VII case was not reasonably

related to her charges of sex and national origin discrimination with the EEOC because the former was a "wholly different type of discrimination"); *McPartland v. American Broadcasting Co.*, 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (Leisure, J.) (court dismissed plaintiff's age discrimination claim in Title VII case, where plaintiff did not make mention of such discrimination in her EEOC charge regarding sex discrimination, harassment, retaliation and discriminatory discharge); *Newton v. Kroger Co.*, 501 F.Supp. 177, 178 (E.D.Ark.1980) (court dismissed plaintiff's sex discrimination claim in Title VII and 42 U.S.C. § 1981 claim, where plaintiff's EEOC charge only mentioned racial discrimination); *Lamont v. Forman Bros., Inc.*, 410 F.Supp. 912, 917 (D.D.C.1976) (court refused to hear discrimination claim based on religion in Title VII action, where plaintiff filed initial claim with EEOC for discrimination based on race or color).

Nevertheless, the courts have used a liberal construction when concluding that a discrimination claim is the type that would have likely arisen from the investigation of another type of discrimination in an EEOC charge. *See Silver*, 602 F.2d at 1090–91 (where plaintiff alleged "comprehensive 'plan' directed [against] Jewish executives" in his EEOC charge, court allowed plaintiff to assert blacklisting claim in his Title VII claim because it was reasonably related to the original charge, although EEOC did not investigate it); *Avagliano v. Sumitomo Shoji America, Inc.*, 614 F.Supp. 1397, 1403–04 (S.D.N.Y.1985) (Tenney, J.) (court concluded that plaintiffs' race discrimination claim could be asserted in their Title VII case, where plaintiffs initially alleged national origin discrimination in their EEOC charge because the allegations were "of the same type and character"); *Reich v. New York Hosp.*, 513 F.Supp. 854, 858–59 (S.D.N.Y.1981) (Sofaer, J.) (where defendant argued that plaintiff's only ADEA claim was her discriminatory dismissal, court asserted that plaintiff's complaint should be liberally construed as timeliness was an issue, and that plaintiff's complaint also alleged refusal to reinstate); *cf. Thomas v. Resort Health Related Facility*, 539 F.Supp. 630, 642 (E.D.N.Y.1982) (where defendants argue that because plaintiff failed

to check off the box for national origin discrimination on the EEOC charge form, he could not assert such discrimination in his Title VII claim, court concluded that plaintiff's mention of national origin discrimination in the EEOC charge precluded the defendant from being able to reasonably argue that plaintiff's complaint impermissibly extended the scope of the EEOC charge).

For example, in *Staples v. Avis Rent–a–Car Sys.*, 537 F.Supp. 1215, 1218 (W.D.N.Y. 1982), plaintiff alleged discriminatory promotional policies based on race in his Title VII and 42 U.S.C. § 1981 claims, although he asserted only discriminatory discharge based on race in his initial EEOC complaint. The court stated,

> The test is not whether the EEOC did, in fact, investigate the alleged racially discriminatory failure to promote but whether such charge reasonably relates to the charges made to the EEOC and to its investigation. When one has complained of a particular kind of discrimination in employment, any and all effects and results flowing from *that kind* of discrimination may be sued upon even though a particular effect or result had not earlier been asserted.

*Staples*, 537 F.Supp. at 1218. The court concluded that "[r]acially discriminatory promotion and discharge practices ... [were] part and parcel of the race discrimination pattern asserted" and that the "racially motivated discharge allegations would reasonably support an EEOC investigation into [defendant's] racially motivated promotion practices," thus giving the court jurisdiction to determine plaintiff's Title VII claims. *Id.* at 1218–19.

Here, Peterson does not assert an entirely different theory for his discriminatory treatment in his ADEA and EEOC claims. Peterson's failure to promote claim, like his constructive discharge claim, is based on age discrimination, and not on any other hypothesis such race, sex or marital status. Furthermore, Peterson's promotions claim is the sort of claim within the scope of the EEOC investigation which would reasonably be expected to grow out of that filing. Peterson

alleged constructive discharge and violation of the ADEA in his EEOC charge, stating:

> My performance reviews over the last few years have been downgraded, causing my salary increases to be lower. As a result my pension was decreased and my investment plan affected, and I was forced to early retirement.

(Memo. of Law in Opp'n to Mot. to Dismiss and to Amend Pre–Trial Order at 6). Peterson also alleged in a four-page statement written by the EEOC representative who interviewed him and which was attached to Peterson's EEOC charge the following: defendant "force[d] me into retirement," "I submitted my retirement papers because of the discrimination," "my performance reviews had been downgraded," I "received the lowest salary increase in my department," "the workload was too heavy," "several of my benefits upon retirement [were adversely affected] including my pension [and] investment plan." (*Id.*, EEOC Aff.) Plaintiff argues in his ADEA suit that one of the factors which led to his constructive discharge was the fact that he was not being promoted, an issue which an EEOC investigation could reasonably have unearthed. Downgraded performance reviews would naturally result in Peterson's not being promoted and Peterson's lower salary increases implies that Peterson was not advancing at a rate commensurate with his skill level. Indeed, the concept of pay raises and promotions are closely linked. In *Mordel v. Ecko Housewares*, 1989 WL 106600, at *3 (N.D.Ill.1989), the court stated in a similar case:

> The allegation of discriminatorily being denied a promotion seems to reasonably flow from the set of facts alleged by the plaintiff in his EEOC charge. The meaning of the words, pay raises and promotions, are very closely related and can even be used interchangeably in today's business world. As such, this allegation is not considered to be unrelated to what was stated in the EEOC complaint and therefore will not be dismissed.

Given the close relationship between promotions on the one hand and positive performance reviews and salary increases on the other, it is clear that Peterson's ADEA claim for denied promotions is well within the subject matter of his EEOC complaint even though it was not explicitly asserted.

Relying on *Albano v. Schering–Plough Corp.*, 912 F.2d 384, 387 (9th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991), defendants argue that a "constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion." ICNA's reliance on *Albano*, however, is misplaced. In *Albano*, the plaintiff initially alleged in his EEOC charge only that he was denied promotions based on age, while in his subsequent ADEA claim, plaintiff alleged constructive discharge based on age. Under the *Albano* facts, it would not have been reasonable to expect the EEOC investigation to explore the issue of constructive discharge solely as a result of a denial of promotion charge. A constructive discharge is not a factor or component of a promotion denial claim and therefore, it would not likely arise in an EEOC investigation of discriminatory promotion practices. But here, Peterson initially alleged his constructive discharge claim, among others things, in the EEOC charge, and then later alleged denial of promotions in the ADEA suit as part and parcel of the initial constructive discharge claim. Peterson's constructive discharge claim along with his other allegations sufficiently alerted the EEOC investigating agency as to possible promotion denials, and Peterson's promotion denial claim was a logical extension of his whole EEOC charge. Accordingly, defendants' motion to dismiss the claim is denied.

## II.

■ Defendants contend that plaintiff's ADEA claims for denial of a promotion in 1985 and denial of appropriate salary increases in 1985 and 1986 are time-barred, and that therefore, this court lacks jurisdiction over these claims. However, in *Peterson v. Insurance Co. of North America*, 40 F.3d 26 (2d Cir.1994), the Second Circuit already resolved this issue, holding that Peterson's ADEA complaint had been filed in a timely

manner.[1] ICNA is estopped from bringing this issue under res judicata. *See* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 4418, 4428 (1981). Accordingly, the court holds that there is proper jurisdiction over plaintiff's claims and defendants' motion to dismiss is denied. Consequently, the court need not amend the pre-trial order or preclude evidence from trial.

IT IS SO ORDERED.

---

**1.** Peterson brought this action in the United States District Court for the Southern District of New York against ICNA for willful violation of the ADEA and breach of contract under New York law. Defendants moved for summary judgment, arguing, *inter alia,* that Peterson failed to bring his action prior to the expiration of the statute of limitations and that the Age Discrimination Claims Assistance Act, Pub.L. No. 100–283, 102 Stat. 78 (1988), *as amended,* Pub.L. No. 101–504, 104 Stat. 1298 (1990) (the "ADCAA"), *reprinted in* 29 U.S.C.A. § 626 historical and statutory note (Supp.1994), did not extend the deadline for Peterson's ADEA claim. The district court granted defendants' motion and dismissed Peterson's complaint. *Peterson v. Insurance Co. of North America and CIGNA Corp.,* 822 F.Supp. 1040, 1042–44 (S.D.N.Y.1993) (Carter, J.), *rev'd,* 40 F.3d 26 (2nd Cir.1994). Peterson appealed and the Second Circuit reversed, concluding that ADCAA was available to Peterson to extend the limitations period. *Peterson,* 40 F.3d at 27.

Once again, defendant argues that Peterson's claims were time-barred because 29 U.S.C. § 626 (1985) provides, in pertinent part:

> (d) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the ... [EEOC]. Such a charge shall be filed—
>> (2) in a case in which Section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred....

All parties agree that the limitations period ended on October 28, 1990, prior to Peterson's bringing his ADEA suit. *Peterson,* 822 F.Supp. at 1042. However, this issue is moot given the Second Circuit's ruling that the limitations period was extended pursuant to the ADCAA and that Peterson's claim for willful violation of the ADEA was within the extension. *Peterson,* 40 F.3d at 31.