**David J. DITTMANN, Plaintiff,**

v.

**IRECO, INC., Defendant.**

**No. 92–CV–625.**

United States District Court,
N.D. New York.

April 25, 1995.

---

Michael T. Wallender, Albany, NY, for plaintiff.

Roemer and Featherstonhaugh, P.C. (Claudia A. Ryan, of counsel), Albany, for defendant.

## *MEMORANDUM–DECISION and ORDER*

HURD, United States Magistrate Judge.

Presently before the court are plaintiff's motion for partial summary judgment and defendant's motion for attorney fees and costs. Opposition to both motions were filed by the parties. Oral argument was heard on March 2, 1995.

### *FACTS*

Plaintiff David J. Dittmann was an employee of defendant Ireco, Inc. and its predecessor company, Hercules, Inc., for twenty-eight years, from June 1962 through August 28, 1990. During the last 27 years of his employment for defendant, plaintiff worked at the Port Ewen, New York, manufacturing facility. Plaintiff held various supervisory positions, the latest being Production Manager starting in 1989. Mr. David Nowlen ("Nowlen"), Plant Manager at the Port Ewen facility, called plaintiff into his office on the

morning of August 28, 1990, and informed plaintiff that his Production Manager position was being eliminated as part of a corporate reorganization and reduction in force. Nowlen gave plaintiff the option of termination or transfer to a position as an environmental manager at a facility in a small town in Missouri at a reduction in pay of about 37%, as well as a reduction in job responsibilities. Nowlen then demanded plaintiff's keys, and security personnel escorted plaintiff off the plant premises. Several days later plaintiff received a letter reiterating the alternative of termination or transfer. Plaintiff chose termination.

Plaintiff was fifty years of age at the time of his termination, and he received consistently excellent performance evaluations and merit pay increases. Plaintiff filed the current action on May 15, 1992, alleging that the defendant discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

Plaintiff alleges that his production manager position was subsumed into a new position, Manager of Manufacturing, and that he was fully qualified to perform the job responsibilities of the new position. Defendant never told plaintiff that the Manager of Manufacturing position was available at the time he was terminated, and never offered plaintiff that or any other open position at the Port Ewen plant for which he was qualified. However, defendant contends that the reorganization and new position were discussed with plaintiff in January, 1990, and plaintiff was offered the new position, but turned it down. The new position of Manager of Manufacturing eventually was filled by Ronald Johnson, then thirty-eight years of age.

Defendant asserts that plaintiff never applied for employment with Ireco after September 14, 1990, his last "official" day of work. On August 29, 1990, one day after his position with Ireco was eliminated, plaintiff applied for a position with Kingston Hospital and was eventually hired for that position in November 1990. Further, plaintiff was retained on the Ireco payroll until September 14, 1990, and received $115,405.60 in cash as a consequence of his resignation from Ireco.

More than half of the cash plaintiff received was a lump sum payment from his retirement plan.

Also on the morning of August 28, 1990, another employee, John Rose ("Rose"), was called into Nowlen's office, advised of his termination due to the reorganization, then escorted off the plant premises. Rose was fifty-six years of age at that time. Five other supervisory employees, all under age forty, were terminated between August 28, and September 8, 1990, for unsatisfactory performance. Rose was successful in an age discrimination suit brought against Ireco. Final judgment was entered in that case, 92–CV–626, on March 6, 1995. The Honorable Howard G. Munson, Senior Judge, denied defendant Ireco's motions for post-trial relief pursuant to Federal Rules of Civil Procedure 50 and 59. Additionally, the court granted plaintiff's motions for front pay, post-judgment interest, and attorney's fees and costs. (*See* Wallender's Aff.Ex. B.)

## *DISCUSSION*

### I. *PARTIAL SUMMARY JUDGMENT*

Plaintiff moves this court to find that all elements of his prima facie case have been established and that defendant is precluded by the decision in *Rose v. Ireco* from propounding a nondiscriminatory reason for his termination. The plaintiff therefore moves the court to grant partial summary judgment on the issue of liability.

#### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91

L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 .(1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

Moreover, material facts set forth in the movant's statement required by the local rules are deemed admitted unless controverted in the nonmovant's statement in opposition. L.R. 7.1(f). Thus, no genuine issue exists as to facts set forth in a movant's 7.1(f) Statement if the nonmovant fails to put such facts into controversy by a response in opposition to the summary judgment motion. *See id.*

## B. *ADEA Claim*

 The plaintiff may establish a prima facie case of age discrimination by indirect evidence showing: "(1) that he was within the protected age group; (2) that he was qualified for the job; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination;" *Stetson v.* *NYNEX Serv. Co.,* 995 ·F.2d 355, 359 (2d Cir.1993); *Russo v. Trifari, Krussman & Fishel, Inc.,* 837 F.2d 40, 43 (2d Cir.1988); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983). Constructive discharge, where the employer " 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation,' " may establish the third element of the prima facie case. *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1156 (2d Cir.1993) (quoting *Pena,* 702 F.2d at 325) (additional citations omitted). Establishment of a prima facie case by indirect evidence raises an inference of discrimination, and "in effect creates a presumption that the employer unlawfully discriminated against the· employee." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *see also Montana v. First Federal S. & L.,* 869 F.2d 100, 103 (2d Cir.1989) (*McDonnell–Burdine* three-step analysis applies to ADEA cases).

 Once the plaintiff has proven a prima facie case of discrimination, the burden of production then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *McDonnell Douglas Corp.,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *see also Montana,* 869 F.2d at 103. Once the defendant offers this type of evidence, the presumption drops from the case. *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The plaintiff must then persuade the Court that the defendant's proffered reason was merely a "pretext" and that he was the victim of intentional discrimination. *Saint Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——–——, 113· S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993) (plaintiff retains the ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination.). The plaintiff may carry this burden " 'either *directly* by persuading the court that a discrim-

inatory reason more likely motivated the employer or *indirectly* by showing that the employer's proffered explanation is unworthy of credence.'" *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 192 (2d Cir.1991) (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095).

### C. *Prima Facie Case*

Here the plaintiff argues that no genuine issue of fact remains as to all elements of his prima facie case. It is undisputed that plaintiff is within the protected age group and that he was qualified for the positions of Production Manager and Manager of Manufacturing.[1] However, defendant argues that plaintiff was not subjected to an adverse employment action, i.e. discharge, and his leaving the employ of the defendant did not occur in circumstances giving rise to an inference of discrimination.

#### 1. Adverse Employment Action—Discharge

In support of its position that plaintiff was not discharged, defendant argues that plaintiff voluntarily resigned. Defendant further argues that plaintiff was not constructively discharged. It is uncontested that defendant notified plaintiff that his job as production manager was eliminated as a result of a reorganization and reduction in force in management. Nowlen also told plaintiff that no positions were available at the Port Ewen plant which were appropriate for plaintiff's background and experience. At that time, Nowlen took plaintiff's keys and defendant's security guards escorted plaintiff off the plant grounds. Moreover, Nowlen gave no consideration to retaining the plaintiff in *any* position at the Port Ewen plant. (Def.'s Aff.Opp'n Ex. 17 (Nowlen Deposition).) No reasonable mind could conclude that leaving the plant under these conditions was "voluntary."

Defendant points to the Personnel Action Form, a printout of exempt personnel terminations, and plaintiff's Termination Statement, which indicate that plaintiff resigned or quit. These documents, however, are not conclusive. The former two documents are defendant's internal personnel records, which were prepared by defendant. The latter document, although signed by the plaintiff, merely provided for plaintiff to return to the defendant any records and materials belonging to the defendant. Although the Termination Statement refers to plaintiff's "resignation," it is in no way a statement by the plaintiff that he voluntarily resigned. Moreover, plaintiff has unequivocally stated, under oath, that his leaving defendant's employ was purely involuntary. (Dittmann Reply Aff. sworn Feb. 22, 1995.)

Defendant also references plaintiff's acceptance of a severance package, his January 1990 rejection of the Manager of Manufacturing position, and his rejection of the position in Missouri, in support of its argument that plaintiff's leaving the employ of the defendant was voluntary.

First, plaintiff did receive a severance package upon his termination. The package consisted of a lump sum payment of nine months' salary, which was greater than the thirteen-week maximum provided for under the normal severance policy. The letter sent by the Director of Human Resources confirming the conversation with the plaintiff on August 28, 1990, stated that this enhanced payment was in recognition of plaintiff's "relatively long service at the Port Ewen facility." (Def.'s Aff.Opp'n Ex. 13.) Although receipt of a severance package may mitigate plaintiff's damages, it does not provide evidence of the voluntariness of plaintiff's actions. *Cf. Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1113 (1st Cir.1989) (discharge ele-

---

**1.** Plaintiff was fifty years of age at the time of his discharge. Plaintiff's statement of material facts in support of his summary judgment motion pursuant to Local Rule 7.1(f) identifies the fact that plaintiff was qualified to fill the position of Manager of Manufacturing. Defendant's 7.1(f) statement does not contend that there is a genuine issue as to this fact. *See* L.R. 7.1(f) (material facts set forth by movant are deemed admitted unless controverted by nonmovant); *see also* Def.'s Mem. of Law in Opp'n at 7, 15 ("defendant" does not dispute plaintiff's "superior qualifications and satisfactory performance record"; "defendant ... does not contend that there was ever any issue regarding the competence of Mr. Dittmann and his qualifications of either the position of Production Manager or Manufacturing Manager").

ment of prima facie case met when employee chose retirement over discharge); *Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1196, 1198 n. 5 (8th Cir.) (prima facie showing made where plaintiff chose early retirement rather than termination), *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1982). To hold otherwise would fly in the face of logic. No reasonable person would refuse severance upon termination, voluntary or involuntary. Assuming the termination is involuntary, the choice left to the terminated employee is to leave 1) with nothing, or 2) with some payment. The question is whether to take the payment or not, not whether to leave or not. If the ex-employee takes the severance payment, it does not convert an involuntary termination into a voluntary exodus. Thus, plaintiff's receipt of the severance package does not negate his prima facie showing of discharge. *See Hebert,* 872 F.2d at 1113 ("choice between early retirement with benefits or discharge without benefits is nothing other than a discharge").

■ Second, defendant states that plaintiff turned down the Manager of Manufacturing position. Defendant's attorney asserts that because plaintiff turned down the position in January 1990, it was not reoffered at the time of his termination. The defendant then concludes that this shows that plaintiff left voluntarily. A careful reading of all the evidence submitted in support of and in opposition to the motion for partial summary judgment clearly indicates that Nowlen discussed the Manager of Manufacturing position with the plaintiff in January 1990. The discussion included plaintiff's comments on the organizational change, and his feeling that the change was not necessary. Further, plaintiff expressed to Nowlen his reluctance to be elevated to a supervisory position over a current coworker.

There is no evidence that Nowlen notified the plaintiff that if he disagreed with the organizational change at that time, eventually the change would be made and plaintiff would be out of a job. There is also no indication in the record that Nowlen formally offered the position to the plaintiff at that time. Moreover, Nowlen testified in deposition that the Manager of Manufacturing posi-

tion was created in July or August of 1990. (Pl.'s Aff.Ex. G.) Thus, the defendant is arguing that the position was offered to plaintiff at least five months before it was created.

Resolution of that question, however, is not necessary. Assuming *arguendo* that the offer was made, the January offer does not make plaintiff's discharge in August voluntary. Defendant's attorney's affidavit stating the reasons that defendant did not offer the position to plaintiff at the time of his termination in August 1990 is not helpful since the attorney does not have personal knowledge. Further, the court notes the lack of an affidavit or other sworn testimony from Nowlen, or any other employee of defendant, stating that the position was not offered to plaintiff because he previously rejected such an offer. Moreover, the court fails to see any logical basis for inferring that plaintiff's action was voluntary based upon defendant's failure to offer an available position, for which plaintiff was qualified, to plaintiff *at the time of his termination.*

■ Third, at the time defendant notified plaintiff his position was eliminated, defendant offered plaintiff a transfer to a plant in Louisiana, Missouri. The $40,000 annual salary for the Environmental Manager position offered to plaintiff was approximately 37% less than his then-current salary of over $63,-000. Additionally, the positions were not comparable. Although defendant's attorney states that there is no admission that the jobs were not comparable, in a deposition taken on October 14, 1992, Nowlen testified that "[t]he positions are not comparable." (Def.'s Aff.Opp'n Ex. 17.) Defendant has presented no additional sworn testimony, other than that of its attorney, to support the assertion that the positions were comparable. Thus, defendant's offer of the position in Missouri is insufficient to remove its conduct from the category of adverse employment action. *See Kauffman v. Kent State Univ.,* 815 F.Supp. 1077, 1084–85 (N.D.Ohio 1993) (transfer constitutes adverse employment action when objectively intolerable to a reasonable person), *aff'd without op.,* 21 F.3d 428 (6th Cir.1994).

### 2. Inference of Discrimination

██ Defendant asserts that plaintiff voluntarily resigned; therefore, the circumstances of his termination do not raise an inference of discrimination. The following circumstances, however, do raise an inference of discrimination. Plaintiff was aged fifty at the time of his termination. As part of the reorganization, plaintiff's position was subsumed by a new position. The new position, created in July or August 1990, was vacant and available at the time of plaintiff's termination, and was later filled by a person under age forty. Plaintiff was qualified for the new position, and the younger person eventually hired was apparently less qualified than the plaintiff. Defendant did not offer the new position to the plaintiff at the time of his termination. From these circumstances, a reasonable fact-finder could infer that age was the reason for plaintiff's termination. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (employer continuing "to seek applicants from persons of the plaintiff's qualification to fill [plaintiff's] position" after plaintiff's discharge may lead to inference of discriminatory intent); *Montana,* 869 F.2d at 105 (inference of discrimination could be drawn where most of plaintiff's responsibilities were transferred to younger employees and plaintiff was not offered the position of either younger employee); *see also Cronin v. Aetna Life Insur. Co.,* 46 F.3d 196, 203–204 (2d Cir.1995) ("*de minimis*" showing of elements of prima facie case sufficient to defeat summary judgment motion by defendant); *Woroski v. Nashua Corp.,* 31 F.3d 105, 109 (2d Cir.1994) (noting that plaintiff's burden of making out a prima facie case is modest).

### D. *Legitimate Reason for Termination/Pretext*

██ The defendant puts forth the reorganization and reduction in force, and the coincident elimination of plaintiff's position, as the legitimate reason for which plaintiff was terminated. Although the position titled Production Manager held by plaintiff was eliminated, none of his job responsibilities were eliminated. Rather, the responsibilities were performed by the person holding the position titled Manager of Manufacturing. Despite the fact that the Manager of Manufacturing performed duties above and beyond those performed by the Production Manager, it is undisputed that plaintiff was fully qualified to perform all of those duties. Thus, reasonable minds could only conclude that the reorganization and reduction in force was not a legitimate reason for plaintiff's discharge.

Defendant also attempts to use its prior offer of the Manager of Manufacturing position to plaintiff in an effort to justify plaintiff's discharge. Regardless of whether that prior offer was legitimate, the fact that the Manager of Manufacturing position was vacant and available at the time of plaintiff's termination, and defendant failed to offer that position to plaintiff at the time his Production Manager position was eliminated, inescapably leads to the conclusion that the reorganization and coincident elimination of plaintiff's position is not a legitimate reason for plaintiff's termination. Moreover, defendant did not consider plaintiff for *any* position at the Port Ewen plant. Reasonable minds, therefore, could only conclude that the reason proffered by defendant is not worthy of credence. Therefore, plaintiff has met his burden of showing that defendant's proffered reason is pretextual.[2] *See Binder,* 933 F.2d at 191–92. Sufficient evidence does not exist upon which a reasonable jury could find for the defendant. *See Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356; *Gallo,* 22 F.3d at 1223–24.

### E. *Plaintiff's Ultimate Burden*

In order to prevail on a motion for summary judgment, the plaintiff must show that

---

**2.** Plaintiff also moved the court to find that collateral estoppel applies in this case and should preclude defendant from putting forth the reorganization as a legitimate reason for plaintiff's discharge. Plaintiff argues that a finding of liability against the defendant in another case represents a finding that the reorganization was merely a pretext for age discrimination. The court finds it unnecessary to address the collateral estoppel issue due to its finding that, as a matter of law, the reorganization was not a legitimate reason for plaintiff's discharge.

no genuine issue of material fact exists and reasonable minds could only conclude that he was a victim of intentional discrimination. In making this determination, the court may not make inferences in favor of the plaintiff, *see Cronin,* 46 F.3d at 204, and must view the evidence in the light most favorable to the defendant. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1355–56.

This court concludes that the plaintiff has met his ultimate burden as a matter of law: no genuine issues of material fact exist and reasonable minds could only conclude that defendant intentionally discriminated against the plaintiff on the basis of his age. Plaintiff was fifty years of age at the time of his discharge. He had received consistently above average performance evaluations, and the defendant does not dispute that he was qualified for his job. At least one position which was appropriate for plaintiff's background and experience was vacant and available at the time of his discharge. Defendant agrees that plaintiff was qualified to fill this available position. Defendant, however, did not consider plaintiff for this or any other position at the facility where plaintiff had worked for the last twenty-seven years. Rather, defendant notified plaintiff that his position was eliminated and no other positions were available at that facility, then escorted him off the premises. A short time later defendant filled the available position with a person thirty-eight years of age. Reasonable minds could only conclude that defendant intentionally discriminated against plaintiff on the basis of his age.

Moreover, the evidence proffered by defendant to refute its intentional discrimination are, as a matter of law, not legitimate reasons for the discharge. First, defendant offered plaintiff a position in Louisiana, Missouri. The Missouri position paid approximately 37% less than he was making at the time of his termination, and acceptance would have required plaintiff to move his family halfway across the country. As a matter of law the positions were not comparable. Thus, the offer of the Missouri position was insufficient to negate defendant's intentional discriminatory discharge.

Second, defendant offered a form letter signed by plaintiff which referred to his "resignation." However, the letter was merely an acknowledgement by plaintiff that he would return to the defendant any materials that were defendant's property which plaintiff still had in his possession. The letter simply is not probative of any issue in the case. Third, defendant asserted that acceptance of a severance package made plaintiff's termination of employment voluntary. However, plaintiff accepted the severance only after being terminated and escorted off the plant premises. As a matter of law acceptance of the severance package is probative to show mitigation of damages but not of voluntariness.

Finally, defendant's attorney states that the defendant did not offer the available position to plaintiff at the time of his termination because plaintiff rejected the position six or seven months earlier. Taking this as true, it still remains a fact that a position was available at the time of plaintiff's discharge for which he was fully qualified and the defendant failed to offer or even consider plaintiff for this position.

The court therefore finds that based upon the circumstantial evidence presented by the plaintiff, reasonable minds could only conclude that defendant intentionally discriminated against plaintiff. Moreover, defendant's proffered legitimate reason for the discharge is not legitimate as a matter of law, and defendant has presented little or no other evidence in support of its position. No reasonable jury could find in favor of the defendant. Therefore, plaintiff is entitled to judgment as a matter of law.

## II. *ATTORNEY'S FEES AND COSTS*

Defendant has moved the court to grant attorney's fees and costs for trial preparation incurred unnecessarily due to plaintiff's untimely application for adjournment of the trial date, pursuant to Local Rule 7.1(k). This matter was scheduled for trial on December 5, 1994. Pretrial filings were due November 28, 1994. On November 21, 1994, plaintiff filed an order to show cause to stay the trial, returnable on November 22, 1994. The court adjourned the trial date sine die

pending the outcome of the *Rose v. Ireco* case.

 Defendant alleges that the plaintiff failed to make a clear and specific showing of good and specific cause why the order to show cause was necessary, and failed to give reasonable advance notice, contrary to the mandates of Local Rule 7.1(i). Failure to comply with Local Rule 7.1 "subjects the offender to discipline as the court shall deem appropriate, including sanctions and the imposition of costs and attorney's fees to opposing counsel." L.R. 7.1(k).

The court finds that the adjournment in this case was proper. Plaintiff's request for adjournment of the trial date resulted in narrowing the issues for trial, thereby reducing the court and the parties time in trial. The adjournment will result in a more efficient determination of the action. The court finds, therefore, that imposition of the sanction of attorney's fees and costs is inappropriate in these circumstances.

Defendant argues that an airline ticket purchased so that defendant's counsel could meet with witnesses prior to trial was unused and nonrefundable. However, the itinerary submitted by defense counsel in support of the request for this cost states "CAUTION: TICKETS HAVE VALUE IF UNUSED, PLEASE RETURN FOR CREDIT OR REFUND." (Def.'s Aff.Ex. B.) As plaintiff's attorney points out, there may be a small fee for rewriting the ticket, and a cost differential if the destination were changed. However, defendant has requested the entire cost of the ticket, $560.00, and has not submitted any evidence indicating its actual loss on the ticket. The court therefore finds it inappropriate to award costs for the price of the airline ticket.

### CONCLUSION

Plaintiff has met his initial burden of showing that no genuine issue of material fact remains as to establishment of a prima facie case of age discrimination. The presumption of discrimination therefore arose. No genuine issue of material fact remains as to defendant's proffered reason for discharging plaintiff; that reason was not legitimate and is merely a pretext. Plaintiff has met his overall burden of establishing that he was a victim of intentional discrimination. No reasonable juror could find in favor of the defendant. Therefore, plaintiff is entitled to judgment as a matter of law on the issue of liability.

Adjournment of the trial date as requested by plaintiff will result in narrowing the issues for trial and more expedient disposition of the case. An award to defendant of costs and attorneys fees is therefore inappropriate.

Accordingly, it is hereby

ORDERED, that

1. Plaintiff's motion for partial summary judgment on the issue of liability is GRANTED; and

2. Defendant's motion for attorney's fees and costs is DENIED.