David J. DITTMANN, Plaintiff,

v.

IRECO, INC., Defendant.

No. 92–CV–625.

United States District Court,
N.D. New York.

Nov. 7, 1995.

Michael T. Wallender, Albany, NY, for Plaintiff.

Ryan, Orlando & Smallacombe, LLP (Claudia A. Ryan, Philip J. Iovieno, of counsel), Albany, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Presently before the court are plaintiff's motion for partial summary judgment on his claim for liquidated damages, and defendant's cross-motion for partial summary judgment dismissing that same claim. Opposition to both motions were filed by the parties. Oral argument was heard on October 12, 1995.

### PROCEDURAL HISTORY and FACTS

This is an action commenced pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. On April 20, 1995, this court granted partial summary judgment for the plaintiff on the issue of liability, finding that defendant Ireco, Inc. ("Ireco") intentionally discriminated against the plaintiff on the basis of his age. *Ditt-*

*mann v. Ireco,* 883 F.Supp. 807 (N.D.N.Y. 1995). The issue now before the court is whether that decision requires a finding that the intentional discrimination was willful as a matter of law, entitling plaintiff to liquidated damages.

The court previously found that circumstantial evidence established plaintiff's prima facie case, and therefore created a presumption of unlawful discrimination. The defendant then proffered the reorganization and coincident elimination of plaintiff's position as the legitimate reason for plaintiff's termination. At that time, defendant never claimed that it consulted with counsel about ADEA ramifications. Nor did it claim that if it did violate the ADEA, such a violation was unintentional. The court found the proffered reason to be pretextual because the reorganization created a position for which plaintiff was fully qualified, and defendant failed to offer that position to plaintiff at the time of his termination. Moreover, the court found that the offer of a noncomparable position in Missouri, a form letter signed by plaintiff referring to "resignation," acceptance of a severance package after the termination, and rejection of the new position months before it was even created were insufficient to refute defendant's intentional discrimination. Familiarity with the detailed facts as set forth in the April 20, 1995, Memorandum–Decision and Order is assumed. *Id.*

### DISCUSSION

#### I. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1355. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

#### II. *Willful Violation of the ADEA*

The ADEA provides that willful violations of the act will subject the employer to liability for liquidated damages. 29 U.S.C.A. § 626(b) (1985). A violation is willful where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, —, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993) (reaffirming the definition of willful set forth in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985)). The "knowledge or reckless disregard" standard applies to all disparate treatment cases under the ADEA, whether proven by direct or circumstantial evidence.[1] *Id.* Because liquidated damages are punitive in nature, where there is evi-

---

1. This is a disparate *treatment* case.

dence that the defendant acted in good faith liquidated damages will not be assessed. *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826 (2d Cir.1992); *Benjamin v. United Merchants and Mfrs., Inc.*, 873 F.2d 41, 45 (2d Cir.1989). Thus, once an employer is found to have intentionally discriminated against an employee in violation of the ADEA, it may avoid a finding of willfulness if it shows that it acted in good faith and nonrecklessly. However, under such circumstances, this defense is not broad and all encompassing. The Supreme Court recognizes only three acts of "good faith and nonrecklessness" which may save the employer from liquidated damages. Specifically: (1) the employer was ignorant of the correlation between the selection mechanism and age;[2] (2) the employer believed that age was a bona fide occupational qualification ("BFOQ"); and (3) the employer believed the employee was not covered by the ADEA.[3] *Hazen Paper Co.*, 507 U.S. at ——, 113 S.Ct. at 1709; *Pierce*, 955 F.2d at 826; *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 84 (1983).[4] Thus, the "good faith and nonreckless" exceptions which apply in a disparate treatment case such as this one have been narrowly defined to include only (1) BFOQ, or (2) exemption from ADEA protection.

Unlike its opposition to plaintiff's original motion for summary judgment, the defendants now raise broad and sweeping claims of "good faith and nonreckless" behavior in that it consulted with its attorneys before implementing the reorganization plan and discharging the plaintiff. This is insufficient, however, because the defendant has raised no issues of fact that it acted in "good faith" because of one of the particular two reasons set forth above which apply in disparate treatment cases such as this.

■ In the instant case the court found that the defendant employer intentionally discriminated against the plaintiff on the basis of his age in violation of the ADEA.

Defendant now admits it was well aware that discharging a protected employee on the basis of age would violate the ADEA. Since the defendant knew that age discrimination violates the ADEA, and the defendant intentionally discriminated on the basis of age, it follows that the defendant knowingly and willfully violated the ADEA. *See Hazen Paper Co.*, 507 U.S. at ——, 113 S.Ct. at 1710 (employer who "knew ... its conduct was prohibited" acted willfully). Therefore, the defendant will be liable for liquidated damages unless it shows that the discriminating conduct was in good faith and nonreckless. *See id.* ("It would be a wholly circular and self-defeating interpretation of the ADEA to hold that, in cases where an employer more likely knows its conduct to be illegal, knowledge alone does not suffice for liquidated damages."); *Pierce*, 955 F.2d at 826 (where an employer intentionally denied plaintiff a promotion because of his age and the employer knew that to do so violated the ADEA, the employer "knew ... its conduct was prohibited by the ADEA" and a finding of willfulness was proper) (quoting *Thurston*, 469 U.S. at 126, 105 S.Ct. at 624).

In *Pierce*, the plaintiff, a protected employee, was terminated when his position was eliminated due to a reorganization and reduction in force. 955 F.2d at 823. The discrimination claim flowed from the employer's failure to promote plaintiff to a position, General Manager, which was open and available at the time of the discharge. *Id.* Defendant argued in its motion for judgment notwithstanding the verdict that plaintiff failed to formally apply for the position when it was open, therefore defeating his prima facie case. *Id.* at 824. The court found that there was evidence to support the jury's finding of intentional discrimination. *Id.* at 825.

The defendant in *Pierce* also argued that the trial court's charge to the jury as to willfulness was deficient in failing to include an instruction permitting consideration of de-

---

**2.** This would generally be applicable in a disparate *impact* case.

**3.** For example, the ADEA exempts bona fide executives, 29 U.S.C. § 631(c), and those affected by bona fide seniority systems, § 623(f)(2), from its protection.

**4.** Although *Hagelthorn* was decided prior to the Supreme Court's decisions in *Thurston* and *Hazen Paper Co.*, the Second Circuit followed the "knowing or reckless disregard" standard later set forth by the Supreme Court. *See Hagelthorn*, 710 F.2d at 84.

fendant's good faith. *Id.* at 825–26. The Second Circuit upheld the charge, reasoning that: (1) ignorance of the correlation between the selection mechanism and age could not be claimed because the case was not a disparate impact case; (2) BFOQ was not claimed; and (3) defendant did not claim that it believed that plaintiff was not covered by the ADEA. *Id.* at 826. The court found that the defendant presented "no evidence in support of a particular theory of [its] case" and it therefore was not entitled to a jury instruction on that theory. *Id.*

The facts of the *Pierce* case are strikingly similar to the facts of the case at bar. Both plaintiffs proved their prima facie case with indirect, circumstantial evidence. Neither defendant argued that their case was a disparate impact case, that age was a BFOQ, or that it believed the plaintiff was exempt from coverage by the ADEA. Neither defendant presented evidence to support a theory that its conduct was "in good faith and nonreckless," as narrowly defined by the Supreme Court and the Second Circuit. Following the Second Circuit's reasoning in *Pierce,* the plaintiff in this case proved intentional discrimination, and that the defendant knew that to do so would violate the ADEA. The

defendant failed to show that its conduct was in good faith and nonreckless, or in other words nonwillful. Therefore, defendant's conduct was willful as a matter of law, and liquidated damages must be assessed.[5]

Defendant first argues that a finding of willfulness as a matter of law in this case would defeat Congress' two-tiered scheme of liability. This argument fails, however, because as the Supreme Court said in *Hazen Paper Co.,* the ADEA "provides for liquidated damages where the violation was 'willful,'" not "'where consistent with the principle of a two-tiered liability scheme.'" 507 U.S. ——, 113 S.Ct. at 1709. The *Hazen Paper Co.* Court went on to explain that not all intentional violations would result in liquidated damages because where the employer acted in "good faith and nonrecklessly," liquidated damages should not be imposed. *Id.* As noted above, this good faith and nonreckless exception or excuse is limited to three situations,[6] none of which apply to this case, nor does the defendant argue that those situations apply here. Furthermore, the Court noted that "an employer's reluctance to acknowledge its reliance on the forbidden factor should not cut *against* imposing a penal-

---

**5.** The mandatory nature of assessment of liquidated damages upon a finding of willful violation is set forth in the pattern jury instruction, as follows:

> If you find that the defendant's violation of the ADEA was "willful," you *must* award the plaintiff liquidated damages—that is, an amount equal to the lost wages and benefits you award. Liquidated damages *must* be awarded to the plaintiff in addition to the lost wages and benefits he receives.

4 Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 88.02, Instr. 88–39, at 88–154 (1995) (emphasis added); *see also* 29 U.S.C. § 626(b) ("liquidated damages *shall* be payable only in cases of willful violations" of the ADEA) (emphasis added). Note that in other civil rights cases, where punitive damages are statutorily permitted, upon a finding of wanton and reckless conduct the jury has discretion to award punitive damages and to set the amount of such damages. *See* 3 Sand, *supra* ¶ 77.01, Instr. 77–5, at 77–30.

**6.** The *Hazen Paper Co.* Court defined these situations narrowly, as follows:

> It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA. The ADEA is not an unqualified prohi-

bition on the use of age in employment decisions, but affords the employer a "bona fide occupational qualification" defense, see 29 U.S.C. § 623(f)(1), and exempts certain subject matters and persons, see, e.g., § 623(f)(2) (exemption for bona fide seniority systems and employee benefit plans); § 631(c) (exemption for bona fide executives and high policymakers). If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed. Indeed, in *Thurston* itself we upheld liability but *reversed* an award of liquidated damages because the employer "acted [nonrecklessly] and in good faith in attempting to determine whether [its] plan would violate the ADEA." *Id.* Despite overwhelming circumstantial evidence presented to the contrary, defendant has always maintained that his age had nothing whatsoever to do with the plaintiff's discharge. It has never claimed that it relied on plaintiff's age in reaching its decision to fire him. It denies that it made an "age based decision" to discharge the plaintiff, whether permissible or not under ADEA. Therefore, it is difficult to understand how the defendant can now claim it acted "incorrectly but in good faith and nonrecklessly" in making a decision it claims it never made.

ty." *Id.*, 507 U.S. at —— – ——, 113 S.Ct. at 1709–10.

The defendant cites several cases in support of its proposition that because it consulted its attorneys regarding the legality of the reorganization plan, it acted in good faith and nonrecklessly. The court notes that the defendant, for the first time, asserts that its attorneys opined that the reorganization plan and the discharge of plaintiff were lawful prior to action being taken to implement the plan, and that to reoffer the Manufacturing Manager position at that time was unnecessary.[7] This last minute assertion leads the court to infer that this is a *"post hoc* rationalization" meant to avoid a finding of willfulness. *See Benjamin,* 873 F.2d at 44–45. However, assuming *arguendo* that the assertion is legitimate, the cases cited by defendant are distinguishable on the facts. Moreover, defendant has failed to meet its burden of setting forth facts which create an issue for a trier of fact, as discussed below.

7. In opposition to plaintiff's previous summary judgment motion, defendant argued that plaintiff voluntarily resigned. In support, the defendant submitted selected pages from depositions and the trial transcript in a similar case, *Rose v. Ireco,* 872 F.Supp. 1127 (N.D.N.Y.1995). The argument was based primarily upon three factors: (1) plaintiff rejected the offer of Manufacturing Manager position in January 1990; (2) plaintiff rejected a transfer to Missouri at a 37% reduction in pay; and (3) plaintiff accepted a severance package after his termination. This court, however, rejected that argument and found that plaintiff was discharged as a matter of law. *See Dittmann,* 883 F.Supp. at 812–14. Thus, the court found that the adverse employment action element of plaintiff's prima facie case was met. Interestingly, defendant now has submitted affidavits from both Nowlen and Walter Elston ("Elston"), Senior Vice President of Manufacturing, in which they testify that they believed to offer plaintiff the Manufacturing Manager position in August after he rejected it in January (before it was created) would be unnecessary and ludicrous. Essentially, defendant previously argued that rejection of the position in January defeated plaintiff's prima facie case of intentional discrimination; now defendant argues that the rejection defeats a finding of willful discrimination. Use of the same argument, first to defeat a finding of "intentional" conduct, and then to defeat a finding of "willful" conduct, supports a conclusion that defendant's intentional conduct was indeed willful.

Additionally, among the selected testimony submitted by defendant in support of the previous motion was a portion of the deposition of

In *Thurston,* the Court reversed the lower court's finding that an intentional violation of the ADEA was willful. 469 U.S. at 130, 105 S.Ct. at 626. The Court relied, in part, on the employer's consultation with attorneys to determine if the policy in question complied with the ADEA. *Id.* at 129, 105 S.Ct. at 625. However, in *Thurston,* unlike the case at bar, the policy was facially discriminatory, requiring pilots to retire at age 60, and the defendant argued that age was a BFOQ and the retirement policy was a bona fide seniority system exempt from the ADEA. *Id.* at 122, 105 S.Ct. at 622. Thus, the Court found that although mistaken about the BFOQ and the exemption, the employer had acted in good faith and nonrecklessly in attempting to assure that the policy complied with the ADEA. *Id.* at 129, 105 S.Ct. at 625. Belief in BFOQ or that the plan is exempt from ADEA coverage are two specific "good faith and nonreckless" exceptions.

Nowlen. (*See* Aff.Opp'n filed 2/16/95 Ex. 18.) At page 105, line 20, the following appears:
Q: Was there any consideration given to retaining Mr. Dittman [sic] at the Port Ewen facility in any other position?
A: No.
Q: Why was that?
*Id.* In support of the present motion the entire transcript was submitted. (*See* Notice of Cross–Motion Ex. B.) Significantly, Nowlen's testimony continues at page 106, line 1:
A: We didn't have an opening for him.
*Id.* This testimony indicates that there was no open, available position for which plaintiff was qualified. Therefore, it directly refutes defendant's current assertion that it was the prior rejection of the position which was the reason for plaintiff's termination. These inconsistencies in testimony could give rise to an inference that the latter was an after-the-fact invention to avoid a finding that defendant's conduct was willful.

In any case, defendant's current arguments realistically go to intentional versus unintentional conduct, an issue previously decided, rather than toward the willfulness of its conduct. *See supra* notes 1–3 and accompanying text (delineating the three situations where a finding of nonwillful conduct may be made, as narrowly defined by the Supreme Court in *Hazen Paper Co.*). Further, that the defendant continues to argue that its conduct was not intentional, and in fact that it did not discriminate based upon plaintiff's age, must not be held against the plaintiff when determining whether defendant's conduct was willful. *See Hazen Paper Co.,* 507 U.S. at —— – ——, 113 S.Ct. at 1709–10.

Here there is no argument that age was a BFOQ, or that the reorganization plan was in some way exempt from the ADEA. Quite to the contrary, defendant now admits that it knew that the reorganization plan could violate the ADEA and sought legal counsel to determine if the plan would comply with or violate the ADEA. Moreover, the court previously found that the reorganization plan was merely a pretext, and not a legitimate reason for plaintiff's termination. Thus, there was no finding that it was the reorganization plan itself which violated the ADEA. Even if the plan itself had violated the ADEA, a finding that defendant in good faith attempted to determine that the plan complied with the ADEA and mistakenly believed in that compliance would not result in a finding of nonwillfulness in this case. This is so because unlike *Thurston*, the plan itself did not result in the discriminatory conduct, i.e., the discharge of the plaintiff—the plan resulted in the elimination of plaintiff's position *and* the creation of a vacant position for which plaintiff was well qualified.

Similarly, in *Hysell v. Mercantile Stores Co.*, 736 F.Supp. 457 (S.D.N.Y.1989), the employer argued that plaintiff was a bona fide executive and therefore exempt from the ADEA. *Id.* at 458. In granting partial summary judgment for the defendant on the lack of willfulness, the court referred to a five page letter similar to a memorandum of law written by the employer's counsel applying the law to the facts to support his opinion that the plaintiff was a bona fide executive. *Id.* at 460–61. This belief was a recognized and legitimate "good faith and nonreckless" defense. Again, in this case there is no contention that defendant mistakenly believed that plaintiff was exempt from the ADEA.

Likewise, in *Peterson v. Insurance Co. of North America*, 40 F.3d 26 (2d Cir.1994), the court found that it was error to refuse permission to amend a complaint to allege a nonwillful violation of the ADEA in a constructive discharge. *Id.* at 32. The defendant there argued that a constructive discharge was inherently intentional so that it would be "incongruous to allege non-willful discrimination." Rejecting this argument,

the court reasoned that a constructive discharge did not necessarily constitute a willful violation of the ADEA. *Id.* The Second Circuit reiterated the "knowledge or reckless disregard" standard set forth in *Thurston*. *Id.* at 31–32. Thus, *Peterson* stands for the proposition that in a constructive discharge case, an intentional violation of the ADEA may be willful or non-willful as determined pursuant to the "knowledge or reckless disregard" standard. The case presently before the court is not a constructive discharge case, so that *Peterson* does not directly apply to the facts of this case. Moreover, the willfulness standard set forth in *Peterson* is no different than the willfulness standard applied herein.

Defendant, also for the first time, argues that because a Mr. Elston, Senior Vice President of Manufacturing, testified that he inquired as to the age and length of service of each employee affected by the reorganization, and further consulted with attorneys to assure that the reorganization plan and failure to offer plaintiff an available position, would not violate the ADEA, the intentional discrimination was not willful as a matter of law. This argument also fails. This court has previously held as a matter of law that the reorganization plan and coincident elimination of plaintiff's Production Manager position were pretexts for intentional discrimination in discharging plaintiff and not offering him the available position. Thus, at this point, belated claims of prior attempts by defendant to evaluate and determine whether its reorganization plan violated the ADEA do not affect whether the intentional discrimination was willful.

The mere consultation with attorneys regarding the age and length of service of those affected by the reorganization plan does not show that the violation of the ADEA was not willful. The plan itself did not violate the ADEA. Certainly the attorneys were not approached for an opinion after being told that plaintiff would be terminated because of his age. The defendant has never admitted that it discharged plaintiff because of his age. Rather, this was a case where the plaintiff proved intentional discrimination by circumstantial evidence. It is a classic

case of the type which led the *Hazen Paper Co.* Court to find that plaintiffs in such cases need not make any additional showing beyond intentional discrimination to prevail in a willful violation claim. *See* 507 U.S. at ——, 113 S.Ct. at 1709 (rejecting requirements of direct evidence of discrimination, outrageous conduct, predominant rather than determinative factor). Once the plaintiff has overcome this burden, as he has done in this case, the defendant must come forward with some evidence of "good faith and nonreckless" behavior. The ultimate burden of proof rests, of course, with the plaintiff. But, if the defendant fails to come forward with evidence showing "good faith and nonreckless" behavior within the narrow confines as set forth by the Supreme Court and the Second Circuit, then there is no issue of fact to be tried.

## CONCLUSION

In opposition to this motion, defendant did not put forth any evidence for a jury to consider that its intentional discrimination against the plaintiff was because of one or more of the two "good faith and nonreckless" excuses in a disparate treatment case as defined in *Hazen Paper Co.* and *Pierce.*[8] Therefore, it has failed to raise a genuine issue of material fact to defeat plaintiff's motion. A grant of summary judgment in a discrimination case on the issue of liability, and in particular the issue of liability for liquidated damages, is unusual, and from this court's research, unprecedented. However, this court's previous decision, in combination with the Supreme Court's *Hazen Paper Co.* decision, the Second Circuit's *Pierce* decision, and the defendant's failure to raise any issue of fact regarding a recognized or legitimate "good faith and nonreckless" defense, compels a finding that defendant willfully discriminated against the plaintiff on the basis of his age in violation of the ADEA. *See Pierce,* 955 F.2d at 826 ("Where a party presents no evidence to support a particular theory of his case, he has no right to a jury instruction on that point."). The plaintiff is therefore entitled to judgment as a matter of

law on the issue of willful violation of the ADEA and to liquidated damages.

Accordingly, it is hereby

ORDERED, that

1. Plaintiff's motion for partial summary judgment for liquidated damages is GRANTED; and

2. Defendant's cross-motion for partial summary judgment dismissing the claim for liquidated damages is DENIED.

---

8. Again, no claim is made by the defendant that it was ignorant of the correlation between the selection mechanism and age (disparate impact case), believed age was a BFOQ, or believed that plaintiff was not covered by ADEA.